IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Brenda Gay Vowels, | ) | Civil Action No.  8:14-cv-01138-DCN-JDA |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Carolyn W. Colvin, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to Local Civil Rule 73.02(B)(2)(a), D.S.C., and 28 U.S.C. § 636(b)(1)(B).[1]  Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claim for disability insurance benefits ("DIB").  For the reasons set forth below, it is recommended that the decision of the Commissioner be AFFIRMED.

## PROCEDURAL HISTORY

On May 11, 2011, Plaintiff filed an application for DIB, alleging an onset of disability date of June 3, 1997.  [R. 145–53.]  At the hearing, Plaintiff amended her alleged onset date to July 30, 2004.  [R. 32.]  The claim was denied initially and on reconsideration by the Social Security Administration ("the Administration").  [R. 66–77.]  Plaintiff requested

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

a hearing before an administrative law judge ("ALJ"), and, on October 24, 2012, ALJ Augustus C. Martin conducted a de novo hearing on Plaintiff's claim. [R. 27–54.]

The ALJ issued a decision on November 15, 2012, finding Plaintiff not disabled. [R. 13– 22.] At Step 1,[2] the ALJ found Plaintiff last met the insured status requirements of the Social Security Act ("the Act") on March 31, 2010, and did not engage in substantial gainful activity during the period from her amended alleged onset date of July 30, 2004, through her date last insured ("DLI") of March 31, 2010. [R. 15, Findings 1 & 2.] At Step 2, the ALJ found Plaintiff had the severe impairments of osteoarthritis and a back disorder. [R. 15, Finding 3.] The ALJ also noted Plaintiff alleged carpal tunnel syndrome, but that there was no significant evidence of limitations for this additional impairment. [*Id*.] The ALJ also found Plaintiff had a medically determinable mental impairment of affective disorder which was non-severe because it did not cause more than minimal limitation Plaintiff's ability to perform basic mental work activities. [R. 15–16.] At Step 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 16, Finding 4.] The ALJ specifically analyzed Listing 1.00 and 1.04. [R. 16–17.]

Before addressing Step 4, Plaintiff's ability to perform her past relevant work, the ALJ found Plaintiff retained the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds, through the date last insured, the claimant had the residual functional capacity to perform sedentary, unskilled work as defined in 20 CFR 404.1567(a) except for

---

[2]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

needing a cane for ambulation and alternating positions every
30 minutes.

[R. 17, Finding 5.]  Based on this RFC finding, the ALJ determined at Step 4 that Plaintiff

was unable to perform her past relevant work as an office manager or general office clerk.

[R. 20, Finding 6.]  Considering Plaintiff's age, education, work experience, RFC, and the

testimony of a vocational expert ("VE"), the ALJ found that there were jobs that existed in

significant numbers in the national economy that Plaintiff could have performed during the

relevant time period.  [R.  20, Finding 10.]  Accordingly, the ALJ found Plaintiff had not

been under a disability, as defined by the Act, at any time from July 30, 2004, the amended

alleged onset date, through March 31, 2010, the DLI.  [R. 21, Finding 11.]

Plaintiff requested Appeals Council review of the ALJ's decision, but the Council

declined.  [R. 1–5.]  Plaintiff filed this action for judicial review on March 25, 2014.  [Doc.

1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision is not supported by substantial evidence and

that remand is necessary for the following reasons:

1.    the ALJ committed reversible error at Step 2 by lumping Plaintiff's multiple,
      severe orthopedic impairments together as a "back impairment" rather than
      properly considering and assessing their separate functional impacts on
      Plaintiff's RFC [Doc. 31 at 10–12];

2.    the RFC determination was incorrect because the ALJ failed to properly
      consider Plaintiff's pain complaints in assessing her credibility [*id.* at 12–17];
      and,

3.    the RFC determination was incorrect because the ALJ failed to properly
      consider the opinion of Plaintiff's treating physician J. Edward Nolan, M.D.
      ("Dr. Nolan") which, although given after Plaintiff's DLI, related to her
      condition during the relevant time period [*id*. at 17–19].

3

The Commissioner, on the other hand, contends the ALJ's decision is supported by substantial evidence and that:

1.    the ALJ performed a proper Step 2 analysis and properly considered all of Plaintiff's alleged impairments throughout the decision [Doc. 33 at 13–14];

2.    the ALJ gave proper consideration to Plaintiff's allegations of pain and adequately analyzed her credibility [*id*. at 15–17]; and

3.    the ALJ reasonably explained why he assigned Dr. Nolan's opinion little weight and properly evaluated his medical opinion [*id*. at 17–18].

### **STANDARD OF REVIEW**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963))("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76

F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).  Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek  v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)).  Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court

6

enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*,

941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be
> taken before the Commissioner of Social Security, but only
> upon a showing that there is new evidence which is material
> and that there is good cause for the failure to incorporate such
> evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).  A reviewing court may remand a case to the Commissioner on the

basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the

determination of disability at the time the application was first filed; (2) the evidence is

material to the extent that the Commissioner's decision might reasonably have been

different had the new evidence been before him; (3) there is good cause for the claimant's

failure to submit the evidence when the claim was before the Commissioner; and (4) the

claimant made at least a general showing of the nature of the new evidence to the

reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. §

405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d

26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by*

*amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of*

*Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[3]  With remand under sentence

---

[3]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth
in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the
Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating
a claim for remand based on new evidence. *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152,
2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107,
2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No.
2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health &*
*Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme

six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98. The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the

---

Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990). Accordingly, the Court will apply the more stringent *Borders* inquiry.

impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. § 404.1520. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 404.1572(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* §§ 404.1574–.1575.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* § 404.1521. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. § 423(d)(2)(B).

**C.    *Meets or Equals an Impairment Listed in the Listings of Impairments***

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d).

**D.**     *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[4] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work. 20 C.F.R. § 404.1560(b).

**E.**     *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); 20 C.F.R. § 404.1520(f)–(g). To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids"). Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[5] 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *see also Gory v. Schweiker*, 712 F.2d 929,

---

[4]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a).

[5]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. § 404.1569a(a). A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands. *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. § 404.1569a(c)(1).

930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).  When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."  *Id.* (citations omitted).

## II.     Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe

into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

### III.     Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 404.1527(c). Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

13

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 404.1527(c)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986). Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. § 404.1527(d). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 404.1517; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. § 404.1517. Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

14

V.    **Pain**

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'"  *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain."  *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs."  *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  Indeed, the Fourth Circuit has

15

rejected a rule which would require the claimant to demonstrate objective evidence of the

pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the

Commissioner to promulgate and distribute to all administrative law judges within the circuit

a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v.*

*Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990).  The Commissioner thereafter issued the

following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth
> Circuit (North Carolina, South Carolina, Maryland, Virginia and
> West Virginia), Social Security Ruling (SSR) 88-13, Titles II
> and XVI: Evaluation of Pain and Other Symptoms:
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying
> physical or [m]ental impairment that could reasonably be
> expected to cause pain is shown by medically acceptable
> objective evidence, such as clinical or laboratory diagnostic
> techniques, the adjudicator must evaluate the disabling effects
> of a disability claimant's pain, even though its intensity or
> severity is shown only by subjective evidence.  If an underlying
> impairment capable of causing pain is shown, subjective
> evidence of the pain, its intensity or degree can, by itself,
> support a finding of disability.  Objective medical evidence of
> pain, its intensity or degree (i.e., manifestations of the
> functional effects of pain such as deteriorating nerve or muscle
> tissue, muscle spasm, or sensory or motor disruption), if
> available, should be obtained and considered.  Because pain
> is not readily susceptible of objective proof, however, the
> absence of objective medical evidence of the intensity,
> severity, degree or functional effect of pain is not
> determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990).  SSR 90-1p has since been

superseded by SSR 96-7p, which is consistent with SSR 90-1p.  *See* SSR 96-7p, 61 Fed.

Reg. 34,483-01 (July 2, 1996).  SSR 96-7p provides, "If an individual's statements about

pain or other symptoms are not substantiated by the objective medical evidence, the

adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record.  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria.  *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

### Relevant Medical History

Plaintiff alleged disability due the following conditions: spinal disc, cervical disc, torn rotator cuff, torn ligaments in feet, depression, arthritis, and kidney stones.  [R. 57–58.] Medical records indicate Plaintiff was in a motor vehicle accident on July 20, 2004, in which she was rear ended at a stop.  [R. 227.]  Plaintiff was transported to the emergency room with chief complaints of neck and back pain, and she reported that she had a history of

17

cervical/lumbar spine problems from an accident in 1997. [R. 226.] From August of 2004 to November of 2004, Dr. Nolan administered injections to help with Plaintiff's back pain. [R. 491–94.] Starting in September of 2004, Plaintiff participated in aquatic therapy at MUSC Therapeutic Services ("MUSC") [R. 333–47], physical and occupational therapy starting in December of 2004. [R. 348–406.] Plaintiff's therapy appears to have been directed to lumbar stabilization and increasing the ROM in her wrists. [*See, e.g.*, R. 337.] The occupational therapy was directed to decrease pain in Plaintiff's hands. [*See, e.g.*, R. 349.]

On April 16, 2005, Plaintiff tripped over a cart while shopping at Lowes, and she complained of right side head pain, midline neck pain, lower midline back pain, and left and right shoulder pain. [R. 230.] Plaintiff was transported by Charleston County EMS to East Cooper Hospital. [R. 229.] On October 6, 2005, Plaintiff was again seen by Charleston County EMS after another motor vehicle accident in which she struck a deer. [R. 233.] Plaintiff claimed she was okay, did not need EMS, and was only tense but in no muscular pain. [*Id*.]

The record contains notes to show that Plaintiff saw John Roberts, M.D. (Dr. Roberts") from January 22, 2003, until February 12, 2007. [R. 407–61.] Plaintiff contends that he was a psychiatrist. [Doc. 31 at 2.]

During 2007 and 2008, Dr. Nolan or someone with Trident Pain Center administered injections to Plaintiff to help with her pain. [R. 495–517.]

Plaintiff was seen at Trident Pain Center from April of 2009 through December of 2009 on a bi-weekly maintenance plan to manage pain and reduce spasm with massage sessions. [R. 276–308.]

18

After her DLI (March 31, 2010), on September 24, 2010, Plaintiff was seen in the ER of the East Cooper Medical Center with severe right side pain into her back. [R. 235–36.] A CT of the abdomen and pelvis were taken and findings were normal. [R. 241.] The radiologist, Dr. Bryson Borg ("Dr. Borg"), indicated his impression was mild right hydronephrosis and hydroureter secondary to a 3-mm calculus lodged at the ureterovesicular junction. [*Id*.] Plaintiff was discharged the same day with instructions related to kidney stones, medicines, and instructions to follow up with referral doctor at Carolina Family Urology. [R. 249–50.]

On March 3, 2011, Plaintiff was referred by Dr. Judy Rubano ("Dr. Rubano") for an MRI of the cervical spine without contrast to investigate her neck pain. [R. 268.] The MRI findings included:

1.  moderate to severe right and severe left neural foraminal narrowing at C4-C5 to multi-factorial degenerative change. The neural foraminal stenosis is worse on the left secondary to lateral bulging of the disc which likely contacts the exiting left C5 nerve root.

2.  several left neural foraminal narrowing at C6-C7 secondary to multifactorial degenerative change. The left lateral disc extrusion at this level enters the left neural foramen and contacts the exiting left C6 nerve root.

3.  additional mild to moderate degenerative changes as detailed above.

[R. 269.]

On March 8, 2011, Plaintiff returned to Trident Pain Center and saw Dr. Nolan with respect to her neck and shoulder pain. [R. 310.] Plaintiff was treated with an epidural, cervical steroid injection. [*Id*.] Dr. Nolan described Plaintiff as morbidly obese and in distress appropriate to her pain complaint with sensation grossly intact in the bilateral upper extremities; normal coordination; muscle strength grossly intact in the bilateral upper

extremities; and normal tone and gait. [R. 312.] On March 24, 2011, Plaintiff returned to Dr. Nolan for another cervical injection for her neck and shoulder pain. [R. 313.] On April 7, 2011, Plaintiff was seen by Kristen Giet, P.A., ("Giet") at Trident Pain Center for occipital neuralgia or head pain. [R. 316.] An occipital nerve block was performed, and Plaintiff was told to follow up with Dr. Nolan in two months. [*Id.*] Plaintiff saw Dr. Nolan again on June 7, 2011, and underwent a transforaminal steroid injection bilaterally at S1 and on the right at L3/L4. [R. 319.] On physical exam, Dr. Nolan indicated Plaintiff's short and long term memory were intact; language skills were normal and she had a normal fund of knowledge; coordination was normal; muscle strength was grossly intact in the bilateral lower extremities; tone was normal; and gait antalgic. [R. 321.] Dr. Nolan also noted moderate pain in the bilateral lumbar paraspinous musculature in a bandlike distribution with extension and rotation of the spine with tenderness to palpation overlying the L3/L4, L4/L5, L5/S1 facets joints. [R. 321.] Dr. Nolan also noted moderate lumbar radiculitis pain with ROM in the bilateral S1 and in the right L3 nerve distribution; and moderate pain on the right hip/lower extremities to palpation and with ROM. [*Id.*]

On May 2, 2011, Plaintiff was seen for consultation by Dr. George H. Khoury ("Dr. Khoury") of Charleston Neurosurgical Associates on referral from Dr. Rubano. [R. 271–72.] Dr. Khoury assessed Plaintiff with cervical disc disease and noted that on physical exam, Plaintiff appeared in no acute distress, her gait and station were without abnormality, she had normal muscle tone, and she had 5/5 muscle strength in the bilateral upper extremities to include grips, hand intrinsics, finger flexion, thumb opposition, wrist extensors, biceps, triceps, and deltoids. [R. 271.] Upon reviewing Plaintiff's MRI, Dr. Khoury assessed Plaintiff with kyphosis and stenosis at C3-C4 and C4-C5 above the fusion and 1 below.

20

[R. 273.]  Dr. Khoury advised Plaintiff that she would need a two-level ACD and fusion. [*Id.*]

On March 18, 2011, Plaintiff underwent an x-ray of her cervical spine. [R. 274.] The x-ray

results showed:

1. 3mm anterolisthesis of C2 on C3 on neutral and flexion views reduces on extension views.  There was no abnormal signal in the spinal cord at this level on the most recent MRI.
2. Defuse degeneative changes C3-C7.
3. Anterior spinal fixation C5-C6.

[*Id.*]

On June 30, 2011, a doctor with Carolina Family Care-E Cooper, completed a

questionnaire directed to Plaintiff's mental condition indicating that Plaintiff suffered from

depression and chronic pain which caused her to exhibit a slight work-related limitation in

function due to her mental condition.  [R. 323.]

On October 22, 2012, Dr. Nolan completed a medical source statement directed to

the nature and severity of Plaintiff's physical impairment. [R. 532–36.]  Dr. Nolan opined

as follows:

* Plaintiff can sit 1-2 hours, stand 0-1 hour, and walk 0-1 hours in an 8-hour work day due to moderate to severe pain in the neck and lower back;

* Plaintiff can frequently lift/carry up to 10 pounds, but never over 10 pounds due to her previous cervical fusion, and chronic neck and low back pain;

* Plaintiff must alternate sitting, standing or walking to relieve pain about every 30 minutes;

* Plaintiff cannot perform repetitive actions with her hands such as simple grasping, pushing/pulling, and fine manipulation, due to her previous cervical fusion, elbow pain and hand pain;

* Plaintiff's impairments would cause her to be absent from work four or more times per month; and

21

      \*       Plaintiff can occasionally bend and climb stairs, but can never squat, crawl climb ladders, reach above, stoop, crouch, or kneel due to her previous cervical fusion, neck and low back pain.

[*Id.*]  Dr. Nolan indicated that objective signs of Plaintiff's pain include an MRI of the cervical spine showing moderate spondylosis above and below the fusion at C5/6, stenosis and neural effects.  [R. 535.]  Dr. Nolan also indicated the Plaintiff had difficulty dealing with low and moderate levels of stress due to chronic pain and fatigue due to insomnia. [*Id.*] The side-effects of Plaintiff's medications were identified as drowsiness, nausea, impaired concentration, constipation, and dry mouth.  [*Id.*]

**RFC Determination**

Plaintiff agues the ALJ's RFC analysis is not supported by substantial evidence in that the ALJ failed to make a proper credibility determination with respect to Plaintiff's pain complaints and failed to adequately consider the opinion of Dr. Nolan, which was provided after the DLI but related to Plaintiff's condition during the relevant time period.  The Commissioner, however, contends that the ALJ gave proper consideration to Plaintiff's allegations of pain and adequately analyzed her credibility and reasonably explained why he assigned Dr. Nolan's opinion little weight and properly evaluated his medical opinion. The Court agrees with the Commissioner.

### *The ALJ's RFC Analysis*

In determining Plaintiff's RFC, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent they were inconsistent with the ALJ's RFC assessment. [R.

18.]  Specifically, the ALJ concluded that treatment records as a whole, along with the Plaintiff's many activities of daily living did not support her testimony regarding the severity of her limitations.  [*Id*.]  The ALJ provided a cursory explanation of his consideration of treatment notes dated between November 2004 and August 2010, focusing mainly on indications that Plaintiff was improving with treatment. [R. 18–19.] The ALJ noted certain incidents of Dr. Nolan's treatment of Plaintiff during the relevant time period including lumbar, cervical and sacro-iliac injections for her pain and that she was prescribed a TENS unit. [R. 19.]

In evaluating the medical opinions of record, the ALJ stated that he considered the October 2012 medical source statement by Dr. Nolan and gave it little weight. [R. 20.] The ALJ explained:

> His opinion has been given little weight as it was completed well after the claimant's date last insured of March 31, 2010. Moreover, while he indicated the claimant would be unable to perform even sedentary work, his progress notes during the period under consideration do not support such significant limitations. (Exhibit 13F). Specifically, while Dr. Nolan noted that the claimant had mild to moderate pain, he described her gait and coordination as normal on multiple occasions, and reported she had intact muscle strength in her upper and lower extremities.

[*Id*.]

### *Discussion*

The Administration has provided a definition of RFC and explained what a RFC assessment accomplishes:

> RFC is what an individual can still do despite his or her limitations. RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause

23

> physical or mental limitations or restrictions that may affect his or her capacity to do work related physical and mental activities. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule....

SSR 96–8p, 61 Fed.Reg. 34,474–01, at 34,475 (July 2, 1996) (internal citation and footnotes omitted).  The RFC assessment must first identify the claimant's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. 404.1545 and 416.945.  *See id.*  Only after this identification and assessment may RFC be expressed in terms of the exertional levels of work: sedentary, light, medium, heavy, and very heavy.  *Id.*  Additionally, the Administration has determined that in assessing RFC, the ALJ

> must consider only limitations and restrictions attributable to medically determinable impairments. It is incorrect to find that [a claimant] has limitations or restrictions beyond those caused by his or her medical impairment(s) including any related symptoms, such as pain, due to factors such as age or height, or whether the [claimant] had ever engaged in certain activities in his or her past relevant work (e.g., lifting heavy weights.) Age and body habitus (i .e., natural body build, physique, constitution, size, and weight, insofar as they are unrelated to the [claimant]'s medically determinable impairment(s) and related symptoms) are not factors in assessing RFC....

*Id*. at 34,476.

To assess a claimant's RFC, the ALJ must consider all relevant evidence in the record, including medical history, medical signs, laboratory findings, lay evidence, and medical source statements. *Id*. at 34,477.  SSR 96–8p specifically states, "The RFC

24

assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Id*. at 34,478.  Thus, an ALJ's RFC assessment will necessarily entail assessing the credibility of any alleged limitations, including assessing the credibility of testimony offered by the claimant.

As an initial matter, with respect to the ALJ's consideration of the medical opinion evidence of record, the Court finds the ALJ properly weighted Dr. Nolan's opinion.  As explained above, the ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 404.1527(c).  Here, the ALJ explained that Dr. Nolan had treated Plaintiff for pain from 2004 to 2010, including with injections and at certain times with bi-weekly massages.  The ALJ noted that the October 2012 opinion had been completed well after the DLI, but in any event, the ALJ determined that Dr. Nolan's conclusions relating to Plaintiff's physical abilities were not supported by his progress notes during the relevant time period.[6]  Further, it is apparent the ALJ believed that Dr. Nolan's opinion was not

---

[6]Although the ALJ did not specifically mention it, Dr. Nolan's opinion had a hand-written notation on the front page "Before 3-31-10," thus, although it was completed on October 22, 2012, it appears the doctor intended that it related to the time period prior to March 31, 2010. [R. 532.]  Notably, the ALJ did not reject Dr. Nolan's opinion because it failed to

consistent with the record as a whole, including Plaintiff's activities of daily living.  Upon review, even though the ALJ did not specifically cite the 20 C.F.R. § 404.1527(c) factors, he did consider them and discussed his evaluation of them, and substantial evidence supports the ALJ's consideration of Dr. Nolan's opinion.

With respect to the ALJ's credibility findings, the Court finds the ALJ adequately explained his credibility determination and that his determination is supported by substantial evidence.  Whenever a claimant's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the claimant's statements based on a consideration of the entire case record.  SSR 96–7p, 61 Fed.Reg. at 34,485.  The credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.; see also Hammond*, 765 F.2d at 426 (stating that the ALJ's credibility determination "must refer specifically to the evidence informing the ALJ's conclusions").

Upon considering the record evidence during the relevant time period, the ALJ found that Plaintiff's alleged symptoms were not supported by objective evidence demonstrating that she was prevented from performing all work. [R. 18.] The ALJ determined Plaintiff's allegations were incredible to the extent she alleged she was more limited than reflected in the ALJ's RFC assessment.  [R. 18–19.]  The ALJ explained, in part, that:

---

relate back to the relevant time period.

26

The claimant's activities of daily living are inconsistent with her allegations of such significant functional limitations. During the period under consideration, records from her psychiatrist indicate that she took trips to Orlando, Cancun, Utah, and Asheville. She reported renovating a duplex, decorating, throwing her son a birthday party, shopping, driving, attending church, and exercising. (Exhibits 3F, 10F).

The claimant's subjective complaints to her physicians, the objective findings documented in her medical records, and the treatment that she has required do not support a finding that her severe impairments prevent her from performing all work. Although the claimant experiences pain and walked with a cane during the relevant period, the medical evidence of record shows that she generally had full upper and lower extremity strength, a normal gait, and intact coordination. Treatment records as a whole, along with the claimant's many activities of daily living do not support her testimony regarding the severity of her limitations.

Regarding the claimant's osteoarthritis and back disorder, the claimant was involved in a motor vehicle accident in July 2004 after which she reported pain in her wrist/hands and right ankle as well as exacerbation of low back and neck pain from previous injury. She started aquatic therapy in August 2004 at the Medical University of South Carolina (MUSC). Records indicate that she presented with limited range of motion and mobility, decreased trunk strength, and impaired gait; however, her prognosis was fair. At sessions, she rated pain in her right wrist a 3 out of 10 and in her left wrist a 2 out of 10; treatment notes reported she continued to improve with exercise and pain management. (Exhibits 1F, 9F). Records from Trident Pain Center dated September 2004 report intact upper extremity strength and 4/5 strength of her bilateral lower extremities. She had moderate pain in the thoracic and lumbar paraspinous musculature and mild pain in the cervical paraspinous musculature. She was treated with lumbar, cervical and sacroiliac injections. The claimant reported relief from injections and during an examination in October 2004; she had an intact gait, coordination, and muscle tone in her upper and lower extremities bilaterally. (Exhibit 12F).

....

Records from Dr. Nolan from March 2007 forward generally report that the claimant had mild to moderate pain around her head/cervical, lumbo/sacral, and hip/lower extremities. However, her gait and coordination were described as normal on examinations, and muscle strength was intact in her bilateral upper and lower extremities. There was no indication that she was presenting to examinations with a cane. She had decreased sensation in the right lower extremity. However, straight leg raising was negative. She was treated with injections and prescribed a TENS unit. MRIs from April 2007 showed mild facet hypertrophy at L3-4 and L4-5 and a disc osteophyte complex at C4-C5 resulting in moderate effacement of the thecal sac and mild bilateral neural foraminal narrowing. By April 2008, she rated her pain level a 2 out of 10. Records report that she was beginning a home exercise program and office treatments as tolerated to decrease pain and muscle spasms. She repo[r]ted improvement in May 2008. (Exhibit 12F).

[*Id.*]

While Plaintiff challenges the ALJ's conclusion that Plaintiff's symptoms were over-stated due in large part to his assessment of normal findings on examination; the ALJ's presentation of activities which he felt exceeded her complaints; and the ALJ's failure to address Plaintiff's work history [Doc. 31 at 14–18], Plaintiff has failed to explain how any of the these challenges requires reconsideration of the RFC or a change in the outcome of the ALJ's decision.  It is entirely appropriate for the ALJ to consider all the medical evidence against Plaintiff's subjective complaints, including the treatment records generally indicating that Plaintiff reported symptom improvement.  Furthermore, pursuant to SSR 96–7p, it is appropriate for an ALJ to consider Plaintiff's activities of daily living in assessing her credibility. Because Plaintiff's work history is not a controlling factor in assessing credibility and the ALJ offered numerous reasons for discounting Plaintiff's credibility, the undersigned concludes that the ALJ did not err in failing to assign weight to Plaintiff's work

history.[7]  Upon review, the ALJ's RFC determination is supported by substantial evidence because he gave proper consideration to Plaintiff's complaints of pain, and he accounted for her pain by permitting her to alternate positions every 30 minutes and use a cane.

**Step 2 Severe Impairments**

Plaintiff challenges the ALJ's Step 2 analysis arguing that he failed to appreciably consider Plaintiff's multiple, severe, orthopedic impairments by lumping them all together as a "back impairment" and speaking about her symptoms, pain, and credibility, "in the broadest of strokes."  [Doc. 31 at 11.]  Plaintiff alleges that during the relevant time period she suffered from cervical radiculitis, post laminectomy surgery; cervical facet arthropathy; lumbar facet arthropathy; and sacroiliac joint pain, and that lumping these impairments into a "back impairment" allowed the ALJ to "breeze through the RFC analysis without actually considering her impairments."  [*Id*. at 11–12.]  However, Plaintiff provides no basis for the Court to find that these "impairments" require consideration aside from the ALJ's consideration of Plaintiff's back impairment.  The additional "impairments" cited by Plaintiff appear to be symptoms related to Plaintiff's back impairment, and during the RFC determination the ALJ expressly considered and weighed the treatment notes from Trident Pain Center referred to by Plaintiff as supporting these additional impairments.  Thus, if the ALJ erred at Step 2, the error is harmless because he accounted for the impairments in the RFC determination.  Again, Plaintiff has failed to explain how the ALJ's decision to consider Plaintiff's back impairment as a whole rather than by its individual symptoms requires a change in the outcome of the ALJ's decision.

---

[7]If the ALJ did err in failing to discuss Plaintiff's work history in his credibility assessment, the undersigned recommends finding that any such error was harmless.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the decision of the

Commissioner be AFFIRMED.

IT IS SO RECOMMENDED.


July 30, 2015                                          s/Jacquelyn D. Austin
Greenville, South Carolina                  United States Magistrate Judge