**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION**

| | |
|---|---|
| BRENDA GAY VOWELS, ) | |
| ) | No. 8:14-cv-1138-DCN |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| CAROLYN W. COLVIN, *Commissioner* ) | |
| *of Social Security*, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the court on United States Magistrate Jacquelyn D. Austin's Report and Recommendation ("R&R") that the court affirm Commissioner of Social Security Carolyn Colvin's decision denying claimant Brenda Gay Vowels's ("Vowels") application for disability insurance benefits ("DIB"). Vowels filed objections to the R&R. For the reasons set forth below, the court rejects the R&R, reverses the Commissioner's decision, and remands for further administrative proceedings.

### I.   BACKGROUND

Unless otherwise noted, the following background is drawn from the R&R.

#### A.   Procedural History

Vowels filed an application for DIB on May 11, 2011, alleging she had been disabled since June 3, 1997 through her date last insured of March 31, 2010. The Social Security Administration ("the Agency") denied Vowels's application both initially and on reconsideration. Vowels requested a hearing before an administrative law judge ("ALJ"), and ALJ Augustus C. Martin presided over the October 24, 2012 hearing. At the hearing, Vowels amended her alleged disability onset date to July 30, 2004. Tr. 13. In a decision

1

issued on November 15, 2012, the ALJ determined that Vowels was not disabled. Vowels requested Appeals Council review of the ALJ's decision. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review on January 31, 2014.

On March 25, 2014, Vowels filed this action seeking review of the ALJ's decision. The magistrate judge issued an R&R on July 30, 2015, recommending that this court affirm the ALJ's decision. Vowels filed objections to the R&R on August 31, 2015, and the Commissioner responded on September 4, 2015. This matter is now ripe for the court's review.

### B. Medical History

Because the parties are familiar with Vowels's medical history, the court dispenses with a lengthy recitation thereof and instead notes a few relevant facts. Vowels was forty years old at the time of her alleged amended disability onset date. Tr. 31. She has a high school education and received vocational training as a hairdresser. Tr. 35. She has past relevant work experience as a hairdresser and office manager. Tr. 37–38. In her application, Vowels alleged disability due to: spinal disc, cervical disc, torn rotator cuff, torn ligaments in feet, depression, arthritis, and kidney stones.

### C. ALJ's Decision

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505. The Social Security regulations establish a five-

step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520, 416.920.  Under this process, the ALJ must determine whether the claimant:  (1) is currently engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment which equals an impairment contained in 20 C.F.R. § 404, Subpt. P, App'x 1, which warrants a finding of disability without considering vocational factors; (4) if not, whether the claimant has an impairment which prevents him or her from performing past relevant work; and (5) if so, whether the claimant is able to perform other work considering both his or her remaining physical and mental capacities (defined by his or her residual functional capacity) and his or her vocational capabilities (age, education, and past work experience) to adjust to a new job.  See 20 C.F.R. § 404.1520; Hall v. Harris, 658 F.2d 260, 264–65 (4th Cir. 1981).  The applicant bears the burden of proof during the first four steps of the inquiry, while the burden shifts to the Commissioner for the final step.  Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)).  "If an applicant's claim fails at any step of the [sequential evaluation] process, the ALJ need not advance to the subsequent steps."  Id. (citing Hunter, 993 F.2d at 35).

      To determine whether Vowels was disabled from July 30, 2004 through March 31, 2010, the ALJ employed the statutorily-required five-step sequential evaluation process.  At step one, the ALJ found that Vowels did not engage in substantial gainful activity during the period at issue. Tr. 15.  At step two, the ALJ found that Vowels suffered from the following severe impairments:  osteoarthritis and a back disorder.  Id.  At step three, the ALJ found that Vowels's impairments or combination thereof did not meet or medically equal one of the impairments listed in the Agency's Listing of

Impairments. Tr. 16. Before reaching the fourth step, the ALJ determined that Vowels retained the residual functional capacity ("RFC") to perform sedentary, unskilled work, with the limitations that Vowels would need a cane for ambulation and would need to alternate positions every 30 minutes. Tr. 17. At step four, the ALJ found that Vowels could not perform any of her past relevant work. Tr. 20. However, at the fifth step, the ALJ found that Vowels could perform jobs that exist in significant numbers in the national economy. The ALJ therefore concluded that Vowels was not disabled during the period at issue. Tr. 21.

## II. STANDARD OF REVIEW

This court is charged with conducting a de novo review of any portion of the magistrate judge's R&R to which specific, written objections are made. 28 U.S.C. § 636(b)(1). This court is not required to review the magistrate judge's factual findings and legal conclusions to which the parties have not objected. See id. The recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination remains with this court. Mathews v. Weber, 423 U.S. 261, 270–71 (1976).

Judicial review of the Commissioner's final decision regarding disability benefits "is limited to determining whether the findings of the [Commissioner] are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." Id. (internal citations omitted). "[I]t is not within the province of a reviewing court to determine the weight of

the evidence, nor is it the court's function to substitute its judgment for that of the [Commissioner] if his decision is supported by substantial evidence." Id.

### III.  DISCUSSION

Vowels objects to the R&R on the following grounds, arguing that the magistrate judge erred in finding that: (1) the ALJ properly followed the treating physician rule; and (2) the ALJ properly assessed Vowels's credibility.  Pl.'s Objections 1, 3.

Vowels's first objection to the R&R is that the magistrate judge improperly found no error in the ALJ assigning little weight to the opinion of Dr. J. Edward Nolan ("Dr. Nolan"), Vowels's treating pain specialist.  Id. at 1.  Specifically, Vowels argues that the ALJ:  (1) improperly rejected Dr. Nolan's opinion on the basis that it did not relate back to the relevant time period; (2) failed to properly assess Dr. Nolan's opinion in accordance with "the treating physician factors;" (3) improperly substituted Dr. Nolan's opinion with the ALJ's own medical opinions; and (4) failed to properly weigh the evidence that supports Dr. Nolan's opinion.  Id. at 1–3.

Social Security regulations require the ALJ to consider all of the medical opinions in a claimant's case record, as well as the rest of the relevant evidence.  20 C.F.R. § 404.1527(c).  Regulations require that a treating physician's opinion be given controlling weight if that opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record.  20 C.F.R. § 404.1527(c)(2); see, e.g., Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001).  "By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).  In such a

circumstance, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Mastro, 270 F.3d at 178.

If a treating physician's opinion does not merit controlling weight, the ALJ is to evaluate it using the following factors:  (1) whether the physician has examined the applicant; (2) the nature and extent of the treatment relationship; (3) the extent to which the opinion is supported by relevant medical evidence; (4) the extent to which the opinion is consistent with the record as a whole; (5) the relevance of the physician's medical specialization to the opinion; and (6) any other factor that tends to support or contradict the opinion.  20 C.F.R. § 404.1527(c); see SSR 96–2p; Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006).  However, the Fourth Circuit has not mandated an express discussion of each factor, and another court in this district has held that "an express discussion of each factor is not required as long as the ALJ demonstrates that he applied the . . . factors and provides good reasons for his decision."  Hendrix v. Astrue, No. 1:09-cv-1283, 2010 WL 3448624, at *3 (D.S.C. Sept. 1, 2010); see § 404.1527(c)(2) (requiring ALJ to give "good reasons" for weight given to treating physician's opinion).

"[S]everal Circuits have held that 'where there is no competing evidence, the ALJ is not permitted to substitute his opinions for those of the examining doctors.'" Rogers v. Colvin, No. 1:13-cv-2327, 2014 WL 5474627, at *17 (D.S.C. Oct. 28, 2014) (citing Grecol v. Halter, 46 F. App'x. 773, 774–75 (6th Cir. 2002) (remanding the case for consideration of plaintiff's psychological condition where there was no evidence that plaintiff's examining doctor's opinion was incorrect); Ness v. Sullivan, 904 F.2d 432, 435 (8th Cir. 1990) (finding that the ALJ erred by substituting his observation that plaintiff did not appear to be depressed or unhealthy during the hearing for the opinion of

6

plaintiff's doctor that plaintiff was suffering from depression); Ramos v. Barnhart, 60 F. App'x. 334, 336 (1st Cir. 2003) (concluding that the ALJ substituted his own lay opinion for the uncontroverted medical evidence where the ALJ concluded that plaintiff did not have an impairment that was diagnosed by two examining physicians and not rejected by any examining physician)). "While the Fourth Circuit has not directly stated this proposition, the court has reversed and remanded the case where the ALJ substituted his opinion for the uncontradicted opinion of an examining physician." Id. (citing Wilson v. Heckler, 743 F.2d 218, 221 (4th Cir. 1984) (finding that the ALJ substituted expertise he did not possess in the field of orthopedic medicine for the opinion of an examining physician that was supported by the findings of a treating physician)).

Dr. Nolan, Vowels's pain management provider at Trident Pain Center, completed a medical source statement on October 22, 2012, in which he opined on the nature and severity of Vowels's physical impairments. Tr. 532–36. He marked the front of the statement "[b]efore" March 31, 2010, indicating that his opinion applied to the relevant time period. Tr. 532. In the statement, Dr. Nolan opined that Vowels could sit for 1-2 hours and stand or walk for 0-1 hour per day and that she would need the opportunity to alternate sitting and standing every 30 minutes. Id. He also opined that Vowels could lift and carry up to 10 pounds frequently, but never more than 10 pounds due to her previous cervical fusion, and her chronic neck and low back pain. Tr. 573. He opined that Vowels could occasionally bend and climb stairs, but that she could never squat, crawl, climb ladders, reach above, stoop, crouch, or kneel. Tr. 574. Dr. Nolan concluded that Vowels's impairments would cause her to miss work four or more times per month. Tr. 574.

> The ALJ briefly evaluated Dr. Nolan's opinion, stating:
>
> The undersigned has considered the October 2012 medical source statement completed by Dr. Nolan. His opinion has been given little weight as it was completed well after the claimant's date last insured of March 31, 2010. Moreover, while he indicated the claimant would be unable to perform even sedentary work, his progress notes during the period under consideration do not support such significant limitations. (Exhibit 13F). Specifically, while Dr. Nolan noted that the claimant had mild to moderate pain, he described her gait and coordination as normal on multiple occasions, and reported she had intact muscle strength in her upper and lower extremities.

Tr. 20.

As an initial matter, it is unclear whether the ALJ recognized the relevancy of Dr. Nolan's opinion. He observed that Dr. Nolan completed the medical source statement after the date last insured, but failed to give any indication that he understood Dr. Nolan's opinion to be specifically relevant to the time period at issue. Tr. 20.

In addition, the ALJ did not explicitly discuss each factor under 20 C.F.R. § 404.1527(c), and his decision does not demonstrate that he otherwise adequately considered these factors. See Hendrix, 2010 WL 3448624, at *3. For example, the ALJ failed to observe the extent of the treatment relationship between Dr. Nolan and Vowels. While the ALJ referenced Vowels's treatment at the Trident Pain Center in September 2004 and commented on "[r]ecords from Dr. Nolan from March 2007 forward," tr. 19, the record indicates that Dr. Nolan treated Vowels for pain as early as January 2003 and up through July 2011. Tr. 321, 408. Although some of their treatment relationship falls outside of the relevant time period, the ALJ gave no indication that he recognized Dr. Nolan's longstanding effort to treat Vowels's pain. Cf. Burch v. Apfel, 9 F. App'x 255, 259 (4th Cir. 2001) (finding adequate discussion of treating physician factors in part because "the ALJ observed that Dr. Murphy began treating Burch in 1992 and that Burch

8

was still under her care at the time of the hearing"); Hooks v. Astrue, 2012 WL 2873944, at *9 (D. Md. July 12, 2012) (finding adequate discussion of treating physician factors in part because "the ALJ noted that Dr. Fox began his treatment of plaintiff on October 18, 2005" and referenced "Dr. Fox's continued care and examination" through September 17, 2008).  Given Dr. Nolan's unique position as the only pain specialist in the record, such an omission is cause for concern.  Further, although the ALJ briefly observed that Dr. Nolan's opinion was inconsistent with his treatment notes, he did not specifically discuss how the opinion was inconsistent with the medical record as a whole.  Cf. Hooks, 2012 WL 2873944, at *9 (finding adequate discussion of treating physician factors in part because "the ALJ explicitly delineated the extent to which Dr. Fox's opinion is supported and unsupported by the medical record as a whole").  Such circumstances make it difficult for the court to determine whether the ALJ's decision to afford Dr. Nolan's opinion little weight is supported by substantial evidence.

 Equally troublesome is the likelihood that the ALJ improperly substituted his medical opinion for that of Dr. Nolan.  The ALJ rejected Dr. Nolan's opinion largely because he found that Dr. Nolan's progress notes did not show that Vowels's pain would prevent her from performing sedentary work.  Tr. 20.  Notably, Dr. Nolan's medical source statement is the only opinion evidence in the record and his opinion is not contradicted by any medical professional.  See also Gibson v. Astrue, 2011 WL 587170, at *6 (W.D. Va. Feb. 10, 2011) ("While an ALJ may disregard certain medical or psychological opinions, he is not free to simply disregard uncontradicted expert opinions in favor of his own opinion on a subject that he is not qualified to render.").

In fact, the progress notes from Vowels's treating psychiatrist, Dr. John Roberts ("Roberts"), support Dr. Nolan's opinion. Dr. Roberts noted that Vowels experienced fairly consistent pain. For example, in 2005 he noted that Vowels's back and hip pain "remain a problem;" physical therapy "has aggravated [Vowels's] back; Vowels's neck and shoulder pain has increased, causing her to use a wheelchair, crutches, and a cane; and her back pain has increased "for no real reason." Tr. 439, 441, 446, 447. In 2006, he noted that "chronic back pain remains a problem" and that "low back and hip pain persist." Tr. 449, 453. On February 12, 2007, he noted that Vowels's back pain had increased and she could not walk at the airport when she went to visit her son. Tr. 461. As a pain specialist, Dr. Nolan would be in the best position to opine on the functional limitations caused by such pain. See Rogers, 2014 WL 5474627, at *20 (noting that the claimant's pain management physician was "in the best position to address" "the effects of pain and pain medications on [the claimant's] ability to function").

The court recognizes that the ALJ attempted to obtain opinions on Vowels's functional limitations from state agency consultants. However, these consultants, who did not have the benefit of Dr. Nolan's opinion in their review of the record, noted that "insufficient evidence [made it impossible] to determine the functional equivalent of [Vowels] at the [date last insured]" both initially, and on reconsideration. Tr. 62, 72. It appears that the consultants only had access to the medical record from 2009 forward. Tr. 58–62, 68–72. Given that Vowels's alleged date of disability is July 30, 2004, it is not surprising that the consultants could not determine Vowels's residual functional capacity.

Another court in this district has found that "[w]here . . . the ALJ disagrees with the findings of an examining physician, he must develop the record to support his conclusion." Mills v. Colvin, No. 1:13-cv-792, 2014 WL 4063598, at *18 (D.S.C. Aug. 12, 2014). In Mills v. Colvin, the ALJ considered the opinions of two examining physicians and found that they were "not consistent with other opinions" in the record. Id. at *17. The court found that the ALJ had failed to develop the record and had instead erroneously substituted his opinion for those of the examining physicians. Id. at *18. According to the court, "[t]he ALJ could have easily referred [the claimant] for a consultative examination before or after that hearing in order to obtain objective evidence to either support or refute the findings of [the examining physicians]." Id.

Here, the ALJ similarly could have developed the record before he issued his decision. Because the ALJ hearing was held two years after Vowels's date last insured, the ALJ could not have ordered a consultative examination at that time. However, he easily could have ordered another opinion from a state agency consultant, requesting review of Dr. Nolan's opinion and other evidence previously omitted.

For the foregoing reasons, the court cannot conclude whether the ALJ's decision to afford Dr. Nolan's opinion "little weight" is supported by substantial evidence. Remand is therefore appropriate. On remand, the ALJ should consider each of the 20 C.F.R. § 404.1527(c) factors, citing specific reasons why Dr. Nolan's opinion is inconsistent with the record as a whole. The ALJ may also find it necessary to further develop the record with additional opinions from state agency consultants. Because the ALJ's failure to properly assess Dr. Nolan's opinion is a sufficient basis for remand, the

11

court will not address Vowels's second objection to the R&R. However, when reviewing the case on remand, the ALJ should consider Vowels's other allegations of error.

## IV.   CONCLUSION

Based on the foregoing, the court **REJECTS** the R&R, **REVERSES** the Commissioner's decision, and **REMANDS** under sentence four of 42 U.S.C. § 405(g) for further proceeding.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**September 18, 2015**
**Charleston, South Carolina**